Bronson, J.

Although the trustees and executors have the legal estate, yet in chancery the equitable interests of the cestuis que trust are governed by the same rules as though they were legal estates. If we lay out of view the possibility that Mrs. Champlin may yet have another child, then, as her youngest child has already attained the age of twenty-one years, the remainder limited upon her life estate will take effect in possession immediately oil her death.. Still I think it a contingent remainder, for the reason that the persons who are to take are not and cannot be ascertained during the continuance of the particular estate. Although “issue” is sometimes taken as a word of limitation, yet in wills, for the purpose of giving effect to the intention of the testator, it has generally been construed as a word of purchase; and I think the issue will not take by inheritance from their ancestor, but as purchasers, or devisees under the will. The persons to take are the children of Mrs. De Peyster and Mrs. Champlin, if living at the termination of the life estate, and the issue of such of the children as may be then dead. It may happen that not one of the children now living will be entitled to share in the division of the property. The same consequence will follow if the children are considered as now having vested interests; for in that view of the question, there-is an executory limitation over to the issue of such of the children as may die in the life time of Mrs. Champlin. And as all the interest which the children now have may be divested by the course of future events, they cannot be entitled to share in a division of the property at this time.
Still, I am of opinion that there should have been a decree for the specific performance of the contract. The whole legal estate is in the executors and trustees; and although it is a trust estate, the power to sell is without any qualification whatever. They can unquestionably give a good title, unless it be for the reason that they intend to divide the money among the cestuis que trust. There is no evidence that any such intention exists. The defendant infers it from the writing of November, 1841. But I can ' draw no such inference from that paper, for two reasons: .
*247 1. The executors and trustees, whose business it is to receive and invest the money, are not parties to the instrument. Mrs. Champlin is the only one of them who is named in it as a party, and she did not execute it as executrix or trustee; but only in respect to her interest as one of the cestuis que trust. She contracted in relation to her life estate, and nothing else. And Jones and Herring, the two other surviving trustees, are not parties to the instrument for any purpose, or in any form. Although the writing shows that some of the beneficiaries contemplated an immediate division of the property, it does not prove that there was any such intention on the part' of the trustees: and so long as they do not consent to a misapplication of the money, the purpose of others concerning it is a matter of no consequence.
2. But there is a further reason why the imputed intention cannot be drawn from this writing. It was evidently prepared with the purpose of having it executed by all the beneficiaries ; or else that no one should be bound by it. It was an attempt to wind up a trust by the mutual consent of' all the parties in interest. But all did not agree to it. J. D. P. Champlin, one of the beneficiaries, refused to come into the arrangement, and did not sign the agreement. That was an end of the whole matter. The proposed agreement never took effect for the want of a complete execution by all the intended parties; and although the writing is called an agreement in the case, it is nothing more than the project for an agreement which was never made.
There is no other evidence of an intention on the part of the trustees to divide the proceeds of the sale; and I think the defence has wholly failed. I am of opinion that the decree should be reversed, and that the usual decree should be entered for the specific performance of the contract.
Lott, Senator.
The legal estate in the premises sold is vested in the executors of Mrs. De Peyster’s will, and they have the power to sell for the purposes therein expressed. I concur in opinion with the two learned jurists from whose decrees the cause comes before the court, that the executors .cannot sell *248 for the purpose of a distribution of the funds during the lifetime of Mrs. Champlin. Until that event it cannot be ascertained who will be entitled, to the estate.
A sale can be made by them before her death, however, if they deem it advisable and expedient for the purposes contemplated by the will.
The expediency of the sale at the time it was made cannot be questioned. Indeed the assistant vice chancellor and chancellor both concede the propriety of the sale in this respect, hut base their respective decisions on the ground that it had been made for an illegal and unauthorized object. In this I think they erred. It is true that a sale for the purpose of distribution was contemplated by Mrs. Champlin and some of her children, and the children of Margaret De Peyster deceased, in the month of November previous to the sale; and an agreement to that effect was drawn up, which was signed by all of them except J. D. P. Champlin. He however declined to execute it. The whole plan was therefore defeated and became incapable of execution, t It required the assent of all to make it obligatory on any. (Townsend v. Hubbard, 4 Hill, 351, 357; Sandford v. Handey, 25 Wendell, 475.) Indeed a bill was filed previously to the sale by J. D. P. Champlin to prevent it, and a temporary injunction was allowed thereon against the execution of conveyances. The sale, notwithstanding all these acts, took place; and no evidence is before us that the intention of the executors in making it was for any purpose not contemplated or allowed by the will.
Two of the executors, William G. Jones and Elbert Herring were not parties to the arraugment above referred to, nor does it appear that" they knew of it. It was therefore clearly res inter alios acta as to them; and all that they have done must be presumed in accordance with their duty.
It is true, Mrs. Chhmplin signed the agreement. But she had an interest in the income, and, so far as the agreement affected her, it was a mere consent to accept a gross fund, instead of the annual allowance. This she had a right to do, and the act was not inconsistent with her duty. The parties to the agreement *249 seem to have acted under the conviction that they had a vested interest in the fund to arise from the sale, which might by mutual consent be distributed before Mrs. Champlin’s death. It appears by the very terms of the proposed agreement that the distribution was to be made “ according to the provisions of the will,” and not in contravention of them. Though they erred in its construction, an abuse of trust was evidently not contemplated-, and such misconstruction by the persons beneficially interested cannot I think be construed into a breach of duty on the part of those having the legal estate, and who were not privy to the arrangement.-
As therefore it is conceded that the executors had the power to sell and convey to purchasers for the purposes contemplated by the will, and as I do not think the defendant has shown that the sale made to him was for any other purpose, I am of opinion that the decree of the chancellor should be reversed with costs, and that of the assistant vice chancellor so far modified as to decree a specific performance by Haight of his purchase.
On the question being put “ Shall this decree be reversed ?” the members of the court voted as follows:
For reversal: The President, Bronson J- and Senators Deyo, Dixon, Faulkner, Foster, Franklin, Lott, Mitchell, Porter, Putnam and Rhodes—12.
For affirmance: Senators Bockee, Denniston and Sherwood—3.